UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

JOSE ROBLES,
                Defendant.

------------------------------------X

08 Cr. 1114 (RWS)

OPINION

**Sweet, D.J.**

      On November 22, 2011, the Court entered a sentencing opinion as to Jose Robles ("Robles" or "Defendant"), subject to modification at the Defendant's sentencing hearing, which is currently scheduled for February 7, 2012. Following the issuance of that opinion, both parties submitted additional briefing regarding Robles' sentence. This opinion addresses the issues raised in those papers.

      For the reasons set forth below, Robles will be sentenced to 35 years' imprisonment. Robles' imprisonment will be followed by 3 years' supervised release. He will also be required to make full restitution to the victims of his crimes in an amount later to be specified, and will be required to pay a special assessment of $600.

1

## I. Prior Proceedings

The prior proceedings and facts of this case are laid out in the Court's opinion of November 22, 2011. Familiarity with those facts is assumed.

## II. Discussion

Each party has petitioned the Court to impose on Robles, respectively, a greater or lesser sentence than that contemplated by the Court's original sentencing opinion. Specifically, Defendant submits that the proposed sentence of 384 months (32 years) should not be imposed and is in excess of the mandatory minimum sentence, which Defendant argues is 300 months (25 years), pursuant to the "except" clause of 18 U.S.C. § 924(c)(1)(A). The Government opposes this contention, arguing that the applicable mandatory minimum is 384 months (32 years). In addition, the Government contends that a sentence of that mandatory minimum is inappropriate and impermissible. The Government asserts that a sentence between 552 and 594 months' (46 to 49.5 years') imprisonment should be imposed. These issues are addressed in turn.

2

## A. The Applicable Mandatory Minimum Sentence is 384 Months

Defendant argues that the mandatory minimum sentence required in this case is 300 months, not 384 months, by reason of the "except" clause contained in 18 U.S.C. §924(c)(1). The relevant provisions of Section 924(c)(1) provide:

(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . .

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years;

. . .

(C) In the case of a second or subsequent conviction under this subsection, the person shall –

(i) be sentenced to a term of imprisonment of not less than 25 years;

. . .

(D) Notwithstanding any other provision of law . . .

(ii) no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment

3

> imposed for the crime of violence or drug
> trafficking crime during which the firearm was
> used, carried, or possessed.

18 U.S.C. §924(c)(1).


Robles asserts that Section 924(c)(1)(A)'s first clause that "[e]xcept to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law," which was added by amendment in 1998, means that when a defendant at the time of sentencing is subject to two mandatory minimum sentences under more than one subjection of Section 924(c), the highest possible mandatory minimum must be imposed, but those sentence need not be stacked. That is, because the 25 year sentence for the second subsequent brandishing is the greatest mandatory sentence Robles faces, that sentence, and that sentence alone, is what must be imposed under the "except" clause. Under this construction, Defendant argues that the applicable mandatory minimum sentence is 25 years, not 32 (25 plus 7) years. Defendant contends that while Congress indisputably sought to increase the penalties for multiple violations of Section 924(c)(1) through the 1998 amendments, which increased the required sentence for a second or subsequent conviction from 20 to 25 years, there were

sensible reasons that led Congress to limit the imposition of multiple, consecutive mandatory minimum sentences in the manner Robles proposes.   Specifically, Defendant argues that studies conducted before 1998 finding that individuals become less likely to commit crimes, including weapons violations, as they grow older supported Congress' decision not to require stacking of sentences under Section 924(c)(1), in order to reduce unnecessary incarceration of people who may have reached an age where they are no longer dangerous.   Defendant asserts that the plain language of the "except" clause supports this construction but even were it to be ambiguous, his construction should be adopted under the rule of lenity, which requires the Court to "resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment."   Bell v. United States, 349 U.S. 81, 83 (1955).

Under the Supreme Court's reasoning in Abbott v. United States, -- U.S. --, 131 S. Ct. 18 (2010), Defendant's argument must be rejected.   In that case, the Court held that

> a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction. Under the "except" clause as we comprehend it, a § 924(c) offender is not subject to stacked sentences

for violating § 924(c). If he possessed, brandished, and discharged a gun, the mandatory penalty would be 10 years, not 22. He is, however, subject to the highest mandatory minimum specified for his conduct in § 924(c), unless another provision of law directed to conduct proscribed by § 924(c) imposes an even greater mandatory minimum.

Abbott, 131 S. Ct. at 23 (2010). Thus in Abbott, the Court clarified that the "except" clause ensures there is not internal stacking, that is, for example, a mandatory minimum imposed for both possessing and brandishing a weapon in the same incident, and applies if another provision of law "directed to the conduct proscribed by § 924(c) imposes an even greater mandatory minimum." Id. However, Abbott rejected the contention that the "except" clause precludes a Section 924(c) sentence whenever any of a defendant's counts of conviction at sentencing require a greater minimum sentence -- in Abbott a greater mandatory minimum for a drug trafficking charge.

A different result cannot be reached here, simply because the count of conviction with the greater mandatory minimum is a second subsequent Section 924(c) count. To interpret Section 924(c) otherwise would have the result of imposing only a sentence on the second subsequent firearms count, with no sentenced imposed as to the first. While

6

Congress could have reasonably concluded that a 25 year sentence for a second or subsequent firearm offense was sufficiently severe such as to account for a first offense, Robles has pointed to no legislative history evincing such an intent. Robles' construction would also create the anomalous result that a defendant sentenced at the same time to two (or potentially more) Section 924(c) crimes would face only one 25 year term, while a defendant sentenced at different times to the same multiple crimes would face escalating penalties of new terms for each crime of conviction.

Nor does the rule of lenity compel Robles' construction. "[T]he 'touchstone' of the rule of lenity is 'statutory ambiguity.'" Bifulco v. United States, 447 U.S. 381, 387 (1980) (quoting Lewis v. United States, 445 U.S. 55, 65 (1980)). While the statutory scheme is severe, indeed, as this Court and the Judicial Conference of the United States have noted, draconian, it is not ambiguous: The "except" clause requires consecutive sentences on each Section 924(c) count of conviction. Though Defendant's construction is a policy decision Congress could have made, and the penalties imposed by Section 924(c) are indisputably severe, Robles' interpretation is implausible given the text, context, and legislative history

of the clause.  See Abbott, 131 S.Ct. at 31 n.9; Caron v. United States, 524 U.S. 308, 316 (1998).

Accordingly, Robles is subject to a mandatory minimum sentence of 384 months.  It is this result that requires Congressional action.

## B. A Sentence of 35 Years is Imposed

In the sentencing opinion of November 22, 2011, this Court found a 384 months' sentence was more than sufficient to accomplish the goals of 18 U.S.C. § 3553(a).  That term was also that recommended by the Probation Office in this case.

The Government argues that a 32 year term "would not only be improper, but it would also be illegal."  (Gov't Mem. 10, Dkt. No. 60.)  The Government contends that a term of 552 to 594 months' (46 to 49.5 years) is appropriate.  To reach this conclusion, the Government factors into its Guidelines calculations: (1) an uncharged robbery of August 21, 2006; (2) a four-level leadership role enhancement on each of the four robbery groups (including the uncharged count); and (3) a two-level increase for a victim sustaining a bodily injury during

8

the robberies committed on October 15, 2005 and November 15, 2005.  As explained below, while incorporation of the uncharged count is appropriate, the record does not support either the four-level role enhancement or the two-level bodily injury enhancement proposed by the Government.

i. The Guidelines

Information regarding the uncharged count was not included in the original presentence report, nor had the Government submitted any information regarding that robbery in connection with Robles' sentencing.  As such, that information was not before the Court upon the previous sentencing opinion. Following the Government's submission, the Probation Office prepared an amended report, including information regarding the August, 2006 robbery.

As detailed in the revised PSR, the relevant additional conduct includes the following:

On August 21, 2006, Robles, along with a co-conspirator known as "Cuba," and another co-conspirator, robbed an employee of a British Petroleum (BP) gas station located at

1730 Cross Bronx Expressway in the Bronx, NY.  On August 21, 2006, a Monday, the employee ("Victim-1") had prepared the deposits for proceeds generated over the past weekend for the BP gas station at 1730 Cross Bronx Expressway.  Victim-1 then drove to another gas station, located on East 233rd Street in the Bronx, to pick up the weekend proceeds for deposit from that gas station; in total, Victim-1 possessed more than %50,000 in proceeds for deposit from the two gas stations.[1]  Afterwards, Victim-1 drove to the Ponce De Leon Federal Bank located at 5560 Broadway (at West 230th Street) in the Bronx (the "Bank").

After Victim-1 parked his vehicle in a curbside parking spot near the corner of West 230th Street and Broadway, he exited his vehicle and walked towards the Bank with the two shopping bags containing the gas station proceeds.  Cuba subsequently walked towards Victim-1, holding a towel over his arm.  Upon nearing Victim-1, Cuba brandished a firearm from underneath the towel and demanded the money from Victim-1. Victim-1 then handed the shopping bags to Cuba, who proceeded to walk away from Victim-1.

Victim-1 followed Cuba for a short distance, as Cuba

---

[1]     The owners of St. Michael Service Station and Height Star Service Station also own the BP gas station located on East 233rd Street in the Bronx.

headed towards a black Honda Accord.   Victim-1 subsequently observed Robles in the driver's seat of the Honda Accord, along with the co-conspirator, who occupied the front-passenger seat. As Cuba entered the Honda Accord, via the rear-passenger door, he dropped his firearm and the one of the shopping bags.   Cuba did not retrieve the firearm, or the shopping bag, as the Honda Accord sped away.

After observing the Honda Accord leave the scene, Victim-1 walked to the area where Cuba had dropped the firearm and the shopping bag.   Victim-01 retrieved the shopping bag, but not the firearm, and proceeded to the Bank; the firearm was later determined to be fake.   After entering the Bank, Victim-1 asked a bank employee to contact the police.

"In deciding upon a sentence, a district court has the discretion to rely on the wide array of facts available to it, including information set forth in the pre-sentence report, as well as circumstantial evidence." U.S. v. Danzi, 414 Fed. Appx. 356, 358 (2d Cir. 2011) (citing United States v. Sisti, 91 F.3d 305, 312–13 (2d Cir. 1996)).   Here, consideration of the newly reported conduct is appropriate.   See Sisti, 91 F.3d at 312 ("'The sentencing court's discretion is 'largely unlimited

11

either as to the kind of information [it] may consider, or the source from which it may come.'" (quoting United States v. Carmona, 873 F.2d 569, 574 (2d Cir. 1989)).

However, neither the Government's proposed four-level role increase for each of the robbery groups nor a two-level increase for a victim sustaining bodily injury during two of the robberies is supported by the record.  Section 3B1.1(a) provides for a four-level increase   "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  Here, Robles and his co-conspirators generally comprised a loosely knit group with no clear leadership structure.  Each participant served a role in each robbery, with no individual functioning as an underling to Robles.  As such, the four-level role enhancement is not warranted.  Next, § 2B3.1(b)(3)(A) provides for a two-level increase if any victim sustained bodily injury.  Application Note 1 (B) to § 1B1.1 provides that "'[b]odily injury' means any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought."  While one victim was kicked during the October 15, 2005 robbery and another was struck during the November 15, 2005 robbery, there is no evidence of any injury beyond bruises or

12

that the victims sought medical care or ordinarily would for
such an injury.  While not minimizing the victims' experiences,
this record does not support a two-level bodily injury increase.

Accordingly, the Court finds the following with
respect to Defendant's applicable offense level, criminal
history, recognition of responsibility, and term of
imprisonment:

Since the Defendant was named in all three robbery
acts, as outlined in Counts 2 to 4, each of these robberies
comprises its own separate group for Guideline calculation
purposes, pursuant to § 1B1.2(d) and § 3D1.2.   Count 1 is
grouped with Counts 2 to 4, pursuant to § 3D1.2, because the
offense involved the same acts and victims.

Group 1: October 15, 2005 Robbery.  The Guideline for
the violation of 18 U.S.C. § 1951 is found in § 2B3.1, which
provides for a base offense level of 20, pursuant to § 2B3.1(a).
Since the Defendant was found guilty of brandishing a firearm in
relation to this robbery, under 18 U.S.C. § 924(c) and as
reflected in Count 5, no firearm enhancement under §
2B3.1(b)(2)(C) is warranted, pursuant to § 2K2.4, Application

13

Note #4.  Accordingly, the adjusted offense level for Group 1 is 20.

Group 2: November 15, 2005 Robbery.  The Guideline for the violation of 18 U.S.C. § 1951 is found in § 2B3.1, which provides for a base offense level of 20, pursuant to § 2B3.1(a). Because the Defendant was found guilty of brandishing a firearm in relation to this robbery, under 18 U.S.C. § 924(c) and as reflected in Count 6, no firearm enhancement under § 2B3.1(b)(2)(C) is warranted, pursuant to § 2K2.4, Application Note #4.  Since a victim was restrained to facilitate the commission of the robbery, pursuant to § 2B3.1(b)(4)(B), a two-level increase is warranted.  Because the robbery caused a loss of more than $50,000 but not more than $250,000, pursuant to § 2B3.1(b)(7)(C), a two-level increase is warranted.  Accordingly, the adjusted offense level for Group 2 is 24.

Group 3: Uncharged August 21, 2006 Robbery.  The Guideline for the violation of 18 U.S.C. § 1951 is found in § 2B3.1, which provides for a base offense level of 20, pursuant to § 2B3.1(a).  Since a dangerous weapon[2] was brandished during

---

[2] Section 1B1.1 Application Note 1(D) defines "dangerous weapon" as: "(i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious

the course of the robbery, pursuant to § 2B3.1(b)(2)(C), a three-level increase is warranted. Since the robbery caused a loss of more than $50,000, but not more than $250,000, pursuant to § 2B3.1(b)(7)(C), a two-level increase is warranted. Accordingly, the adjusted offense level for this additional group is 25.

Group 4: October 2, 2006 Robbery. The Guideline for the violation of 18 U.S.C. § 1951 is found in § 2B3.1, which provides for a base offense level of 20, pursuant to § 2B3.1(a). Since firearms were brandished during the course of the robbery, pursuant to § 2B3.1(b)(2)(C), a five-level increase is warranted. Since the robbery caused a loss of more than $10,000 but not more than $50,000, pursuant to § 2B3.1(b)(7)(B), a one-level increase is warranted. Accordingly, the adjusted offense level for Group 3 is 26.

Pursuant to § 3D1.4, the combined multiple count adjusted offense level is 30, representing a four-level increase from the greatest of the adjusted offense levels for each group.

---

bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument (e.g. a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun)."

15

Accordingly, the applicable offense level is 30.

As detailed in the sentencing opinion of November 22, 2011, Robles' prior convictions warrant a total of two criminal history points, which establish a Criminal History Category of II, pursuant to the table at Chapter 5, Part A, of the Guidelines.

Based on a total offense level of 30 and a Criminal History Category of II, for Counts 1 to 4, the Guideline range for imprisonment is 108 to 135 months. The sentence imposed under this range must be followed by the mandatory and consecutive 84-month term of imprisonment on Count 5, and then a 300-month term of imprisonment on Count 6, pursuant to § 2K2.4(b). Thus, the Guideline range becomes 492 to 519 months' imprisonment.

For Counts 1 to 4, the Guideline range for a term of supervised release is at least 1 year but not more than 3 years, pursuant to § 5D1.2(a)(2). For Counts 5 and 6, the Guideline range for a term of supervised release is at least 2 years but not more than 5 years, pursuant to § 5D1.2(a)(1).

16

For Counts 1 to 4, the Defendant is not eligible for probation because he is being sentenced at the same time to a term of imprisonment on different counts, pursuant to § 5B1.1(b)(1).  For Counts 5 and 6, the Defendant is not eligible for probation because the instant offenses are ones for which probation has been expressly precluded by statute, pursuant to § 5B1.1(b)(2).

The fine range for the instant offense is from $15,000 to $150,000, pursuant to § 5E1.2(c)(3)(A) & (B).  Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7).  The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,357.01 to be used for imprisonment, a monthly cost of $328.20 for supervision, and a monthly cost of $2,153.22 for community confinement.

Pursuant to § 5E1.1(a)(1), in case of an identifiable victim, the Court shall enter a restitution order for the full amount of the victim's loss if such order is authorized under 18 U.S.C. § 3663A.

17

ii. The Sentence

The Government argues that imposition of a 32 year sentence is impermissible under the Second Circuit's decision in United States v. Chavez, 549 F.3d 119 (2d Cir. 2008).  In that case, the Court of Appeals held that

> a sentencing court is required to determine the
> appropriate prison term for the count to which
> the  § 924(c) punishment is to be consecutive;
> and if the court reduces the prison term imposed
> for that underlying count on the ground that the
> total sentence is, in the court's view, too
> severe, the court conflates the two punishments
> and thwarts the will of Congress that the
> punishment imposed for violating § 924(c) be
> "addition[al]" and "[n]ot . . . concurrent[]."

Chavez, 549 F.3d at 135.  18 U.S.C. § 3553(a) sets out factors that the sentencing court must consider in determining an appropriate sentence.  The Section 3553(a) factors include:

> (1) the nature and circumstances of the offense and
>     the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed —
>
>     (A) to reflect the seriousness of the offense,
>         to promote respect for the law, and to
>         provide just punishment for the offense;
>
>     (B) to afford adequate deterrence to criminal

18

conduct;

(C)   to protect the public from further crimes of the defendant; and

(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;

(4)   the kinds of sentence and the sentencing range established for —

(A)   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5)   any pertinent policy statement . . . [issued by the Sentencing Commission];

(6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)   the need to provide restitution to any victims of the offense.


18 U.S.C. § 3553(a).   While recognizing the possible tension between 18 U.S.C. § 3553(a)'s mandate that the court "shall impose a sentence that is sufficient, but not greater than necessary" and mandatory minimum sentences such as those required under Section 924(c), the Court of Appeals in Chavez found that Section 3553 "'cannot be understood to authorize courts to sentence below minimums specifically prescribed by

Congress.'" _Chavez_, 549 F.3d at 135 (quoting United States v. Roberson, 474 F.3d 432, 436 (7th Cir. 2007)); see also United States v. Samas, 561 F.3d 108, 110-11 (2d Cir. 2009).  _Chavez_ thus not only prohibits sentencing courts from imposing sentences that fall below the minimums mandated by Congress but also consideration of the of the sufficiency of the sentence as a whole and whether it reflects the factors enumerated in Section 3553.

It is plain that while 18 U.S.C. § 924(c)(1)(D) provides that no sentence imposed under it "shall run concurrently with any other term of imprisonment imposed on the person," that subsection does not expressly prohibit a court from considering the length of the term imposed under the Section 924(c) count when making a determination of what overall sentence is "sufficient but not greater than necessary" as mandated by 18 U.S.C. § 3553(a).  Section 3553(a) requires consideration of the entirety of the sentence imposed and mandates that sentencing courts ensure that the sentence is "sufficient, but not greater than necessary" in consideration of a broad range of factors including the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the

seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.    While  Section  924's requirement that the firearms sentence must run consecutively to any other term imposed would not seem to be at odds with this Court's consideration of the factors mandated by Section 3553 and the sufficiency of the sentence as a whole, under Chavez, such a consideration is impermissible and not relied upon here. 540 F.3d at 135.

The factors articulated in 18 U.S.C. § 3553(a) remain relevant to the Robles' sentencing for Counts One through Four, and are considered here.

Robles was 23 at the time of the first robbery and is currently 29 years of age.  He is in a committed relationship and the father of a young son, aged 9, and appears to be an attentive father and partner.  According to the PSR, the Defendant has a supportive family.  The criminal conduct here involved the robbery of two Radio Shacks and the proceeds of a gas station, along with the uncharged August 2006 robbery.  No one was injured in the course of those crimes.  Due to the

21

mandatory minimum term, Robles will be well into middle age when released to the community and as such statistically significantly less likely to re-offend. Robles' co-conspirator, Celado, who pleaded only to Count 1, had no prior convictions, and did not personally brandish a weapon, was sentenced to 40 months' home confinement.

In light of the nature and circumstances of the offense and the history and characteristics of the Defendant, the need for the sentence to provide just punishment for the offense and afford adequate deterrence to criminal conduct and protect the public from the Defendant's further crimes, as well as the need to avoid unwarranted sentence disparities, the Court finds that a downward departure from the Guideline sentencing range of a 108 to 135 months' imprisonment is appropriate to impose a "sufficient" sentence under 18 U.S.C. § 3553(a). Accordingly, on Counts One through Four, Robles will be sentenced to 36 months' imprisonment, to be followed by the mandatory and consecutive term of 32 years, for a total term of 35 years.

While under Chavez such considerations do not factor into the final sentence, the Court notes as in the sentencing

opinion of November 22, 2011, that far more serious offenders receive a mere fraction of that which must be imposed on Robles today.

As the United States Sentencing Commission observed in its recent report, the "stacking" of mandatory minimum penalties for certain federal firearms offenses, as is required here, may result in "excessively severe and unjust" penalties, particularly in circumstances where, as here, no one is physically harmed. United States Sentencing Commission, Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System 359 (Oct. 2011) ("Report"), available at http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional _Testimony_and_Reports/Mandatory_Minimum_Penalties/20111031_RtC_ Mandatory_Minimum.cfm. As that report details:

> The Judicial Conference of the United States has historically opposed mandatory minimum penalties, but it has rarely articulated a policy position with respect to particular mandatory minimum sentencing provisions. Evidencing the strength of its opposition to the stacking of mandatory minimum penalties under section 924(c), the Judicial Conference has urged Congress on at least two occasions to amend the "draconian" penalties established at section 924(c) by making it a "true recidivist statute, if not rescinding it all together." The Judicial Conference has supported its position by observing that the sentences resulting from stacking section 924(c)

23

> mandatory minimum penalties are "greater by many
> years" than the guideline sentences for offenders
> who commit the most serious, violent crimes.

Report at 360-61.  Chief Judge Julie Carnes was correct in identifying, on behalf of the Judicial Conference of the United States, the stacking of penalties under section 924(c) as among the "most egregious mandatory minimum provisions that produce the unfairest, harshest, and most irrational results."  Chief Judge Julie Carnes, Mandatory Minimums and Unintended Consequences: Hearing on H.R. 2934, H.R. 834, and H.R. 1466 Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary, 111th Cong. 60-61 (2009).

## III. Conclusion

For the reasons set forth above, Robles will be sentenced to 35 years' imprisonment.  Robles' imprisonment will be followed by 3 years' supervised release.  He will also be required to make full restitution to the victims of his crimes in an amount later to be specified, and will be required to pay a special assessment of $600.  All other terms and conditions of the sentencing opinion of November 22, 2011 will remain in effect.

24

The terms of this sentence are subject to modification at the sentencing hearing scheduled for February 7, 2012.

The sentence that must be imposed is unfair, harsh, and irrational, but is nonetheless required by law. Congressional action is needed to prevent similar results in the future.

It is so ordered.

New York, NY
~~January~~      , 2012
*February 2,*

_____
ROBERT W. SWEET
U.S.D.J.

25