UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

JOSE ROBLES,

Defendant.

---

08 Cr. 1114 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

On August 10, 2021, the Court issued a lengthy decision, in which it denied the motion

by defendant Jose Robles for compassionate release, but solely on the ground that Robles had not

yet exhausted his administrative remedies. *See United States v. Robles*, 553 F. Supp. 3d 172

(S.D.N.Y. 2021). The Court, stated, however, that there were extraordinary and compelling

reasons that would justify—upon such exhaustion—a significant reduction of the 35-year

sentence imposed by the Hon. Robert W. Sweet in February 2012. With Robles now having

exhausted these remedies, this decision reduces Robles' sentence.

As the Court noted in its August 2021 decision, the sentence that Judge Sweet had—

reluctantly—imposed was the result of Robles' trial conviction for two firearms charges under

18 U.S.C. § 924(c). Under the law at the time, these required that mandatory consecutive

sentences totaling 32 years (7 years on one firearms count, followed by 25 years on the other) be

imposed consecutive to Robles' sentence (3 years) on the remaining four counts of conviction,

for Hobbs Act robbery and conspiracy, in violation of 18 U.S.C. § 1951. At sentencing, Judge

Sweet had pronounced the sentence yielded by such mandatory "stacking" "unfair, harsh, and

irrational, but . . . required by law." *Id.* at 176 (internal citation omitted). But, the Court noted,

the First Step Act ("FSA"), enacted in 2018, had abolished stacking on such a draconian scale. As a result, had Robles been sentenced after the enactment of the FSA, he would have faced a mandatory sentence on the two § 924(c) offenses of 14 years (7 years on each), to run consecutive to his sentence on the Hobbs Act charges. And although the FSA is not retroactive, the Court held that the FSA's change in the stacking laws, combined with other extraordinary and compelling circumstances, can constitute sufficient grounds to justify a sentence reduction under the compassionate release statute, 18 U.S.C. § 3582(c). *Id.* at 178–80. The Court found several such circumstances here. Specifically: (1) Judge Sweet, at sentencing, had repeatedly denounced the sentence he was imposing as unjust, and inconsistent with the § 3553(a) factors; (2) Robles had received an "eye-popping[ly]" heavier sentence than his co-defendants who had pled guilty, including a non-cooperator (Celado) whom Judge Sweet had sentenced to a non-custodial term of 40 months' probation; and (3) the COVID-19 pandemic has made Robles' imprisonment far more grueling that Congress or Judge Sweet had reason to anticipate. *Id.* at 179–85.

The Court also found that a reduced sentence would be consistent with the § 3553(a) factors. In brief, although the violent string of armed robberies was gravely serious, the Court held, consistent with Judge Sweet's assessment, that a 35-year sentence far exceeded the bounds of just punishment. Similarly, the Court held, a sentence meaningfully below 35 years in prison could achieve the goals of specific deterrence and the need to protect the public. Prison terms of 35 years, the Court noted, were more typically reserved for murderers, kidnappers, or egregious sex offenders. Further, given Robles's youth (age 23) at the time of the offenses, the Court found it speculative that society would still need protection from him three and a half decades later. And Robles's post-offense (but pre-conviction) conduct was consistent with a degree of

2

maturation. Robles had successfully completed a drug program, committed himself to his faith, and began gainful employment working at a furniture store and delivering furniture. Robles was also living with his partner and son, both of with whom Robles remains close. *Id.* at 185–87.

Accordingly, the Court stated that, upon Robles' exhaustion of administrative remedies, it intended to reduce his sentence. The Court instructed Robles to notify it when his administrative remedies had been exhausted. *Id.* at 187.

On December 12, 2021, the Court received such notification from Robles' counsel. *See* Dkt. 101. The letter reiterated Robles's request for a reduced sentence, and requested Robles' immediate release. *Id.* On December 21, 2021, the Government replied, asking that the sentence reduction be as minimal as possible, given the violent nature of Robles's crimes. *See* Dkt. 103.

In assessing the just and reasonable sentence, the Court has carefully considered the Sentencing Guidelines and the § 3553(a) factors, guided by the "parsimony principle" under which the sentence is to be no longer than necessary to achieve these factors, considered in combination. *See United States v. Ministro-Tapia*, 470 F.3d 137, 138 (2d Cir. 2006) (discussing parsimony clause). Judge Sweet found the Guideline range on the four Hobbs Act counts to be 108–135 months' imprisonment, a calculation the parties do not dispute. To this must be added the mandatory consecutive 14-year (168-month) combined sentence on the firearms counts. The result is an effective Guideline range, all counts considered, of 276–303 months' imprisonment.

The Court's assessment is that the just overall term of imprisonment for Robles in this case is 18 years (216 months). This is to comprise a 48-month (4-year) sentence on each of the four Hobbs Act counts, to run concurrently with one another, to be followed by mandatory consecutive sentences of 84 months (7 years) on each of the two § 924(c) counts.

3

In so concluding, the Court parts company with Judge Sweet's imposition of a 36-month (3 year) sentence on the four Hobbs Act counts. That is for two reasons.

First, Judge Sweet appears to have imposed that sentence mindful of the mandatory 32-year consecutive sentence that he was required to impose on the two firearms counts. In that light, his assessment that a 36-month sentence on the Hobbs Act counts was warranted does not fairly connote that, were a less draconian sentence to follow on the firearms counts, he would have imposed the same sentence on the Hobbs Act counts.

Second, and independently, this Court's assessment is that, but for the impact of COVID-19 on Robles' conditions of confinement, an overall prison sentence approaching 20 years would have been in order. As reviewed in the Court's recent decision and recapped more fully at Robles' original sentencing, the three robberies Robles and his confederates carried out in fall 2006—two of Radio Shack stores in the Bronx, and the third of a gas station—were violent and terrifying, and Robles played a lead role in each. During the first, Robles brandished a silver revolver, ordered employees to lie on the ground, yelled at them, kicked one employee, and pressed his gun against the back of her head. During the second, the robbers tied up the store employees and put plastic bags over their heads; Robles' fingerprints were found on two of these bags; at least one gun was brandished; and an employee was also beaten and had a knife pressed to his face. In the third, Robles and another man, displaying a gun, robbed the employees of the gas station's weekend proceeds. *Robles*, 553 F. Supp. 3d at 175. As a matter of just punishment and assuring that the sentence reflected the seriousness of the crime, these facts demanded a very long sentence, and given the serial nature of these crimes and Robles' heartless conduct during them, the § 3553(a) interests of specific deterrence and protection of the public would pointed in the same direction. And although the non-custodial sentence imposed on co-defendant Celado—

4

who participated in the robberies of the Radio Shack robberies and was an employee of the first store to be robbed—was curious and would have given Robles a basis to argue for a lower sentence to avoid too great a disparity, Robles's circumstances were materially different: Robles led the robbery crew; was found to have participated in all three robberies; and (unlike Celado) brandished a gun.  By pleading guilty, Celado also earned credit for accepting responsibility, which Robles did not.

In assessing the just sentence today, the Court is mindful, too, that Robles's conditions of confinement, as a result of COVID-19, have been far more grueling than could have been imagined, by Congress, the Sentencing Commission, or Judge Sweet at the time of Robles' sentencing.  As of the Court's earlier decision last August, Robles had served more than 16 months subject to heightened restrictions due to COVID-19.  And, like more than 50% of the inmates at FCI Fort Dix, he contracted COVID in prison.  For the reasons the Court reviewed in its decision last August, and based on the authority therein, a lower sentence than otherwise would have been warranted is appropriate under the § 3553(a) factors, to take account of Robles' conditions of confinement.  *See id.* at 182–85.

The Court accordingly grants Robles' motion for a reduction of his sentence.  The Court will issue a revised judgment, imposing a sentence of 48 months on each of counts 1 through 4, these sentences to run concurrently with one another; a sentence of 84 months imprisonment on count 5, to run consecutive to the sentence on counts 1 through 4; and a sentence of 84 months imprisonment on count 6, to run consecutive to the sentence on the other counts.  The other aspects of the sentence imposed by Judge Sweet (including a three-year term of supervised release, and its conditions) will be unchanged.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: August 4, 2022
       New York, New York